Good morning, Your Honors. May it please the Court, Edward J. Hunt, appearing on behalf of Frederick Brewer. Let me just begin by saying this case took strange and weird and bizarre to a new level. Let me explain by that. As to the distribution counts, the person that did the actual, rather as to the distribution controlled buy counts, the person that actually engaged in the controlled buys was never called as a witness. A person that was waiting out in a car on two instances in which the controlled buy occurred at the Brewer residence and another instance, the same person, Maisie Chang, was waiting out in a car, I believe, at a different location, her home, but not at the Brewer residence. The person that was doing the exchange was a person named Heather Legarek. That person was never called as a witness. So in terms of even identification, the identification of the defendant was not completed by Maisie Chang, who was the person that supposedly got the drugs. Eventually, the identification was done by police officers from a distance. But then it got even stranger, Your Honors. At that moment, in February 2023, after about two or three days of trial, when the jury came back guilty as to the conspiracy and guilty as to the possession with intent to deliver and guilty as to the three controlled buys, the jury is asked two very important questions as to the conspiracy and also as to the possession with intent to deliver. Is Brewer, in effect, to be held responsible for this offense involving at least 400 grams? They answer no. Then the default question comes up pretty quickly. Is Brewer responsible, or has rather the government proved, I should rephrase that, has the government proved beyond a reasonable doubt that Brewer is responsible for at least 40 grams? The answer is no. So we have a conspiracy. And by the way, they answered the same way for the possession with intent to deliver charge. No, the government had failed to prove beyond a reasonable doubt that the possession with intent to deliver offense involved 400 grams. And again, answered no, had the government failed to prove beyond, or had the government proved beyond a reasonable doubt that the offense involved at least 40 grams. So we hopped from that to a really, for lack of a better phrase, deep dive into the type of evidence that I'm asking, imploring this court to take a look at as a second look as a constitutional backstop. Knowing full well that this is a deferential standard, that the government, the evidence is viewed in the light most favorable to the government. And that the standard also involves this concept of the rational trier of fact. That in other words, appellate courts are not a do-over court. They're not there to place themselves in the place of the jury. They're just there to take a look at the evidence, see if there's error, and also assess if that deferential standard which favors the government is met. The reason why I have concerns, the reason why most importantly Mr. Brewer has concerns about this case starts not only with the concept of whether a conspiracy was proved at all. Now you might say, well wait a minute Mr. Hahn, there was a lot of talk here about text messages and drug amounts and people, your client posting on Facebook, I got perks or what's up with perks. But here's where the deep dive component comes in. If you pay attention to the text exchanges between Azogio, who is the king of suppliers supposedly, he's the person that would be in Arizona supplying to Don James. Well by the way, parenthetically, maybe not parenthetically, emphatically, Don James, the jury had no problem finding him responsible for 400 grams, answering that question, as to both count one and as to both count two. So just concentrating on Azogio, Azogio is supposedly, under the government's theory, a supplier. He's engaging in these conversations with Don James. At no time in those conversations is Don James saying something that would take this away from the concept of buyer-seller. In other words, he's not saying, look I'm in business with my brother, we gotta hustle here, I gotta come up with the money, anything like that. It's just conversations as if Don James is operating as a sole proprietorship. And as this court is amply aware, because the court has ruled on several occasions, not only in the U.S. v. Johnson that I cite, but also in the United States v. Vizcarra-Milan, when you're analyzing under a totality of circumstances, when you're applying the rules of thumb that help distinguish a conspiracy from a normal buyer-seller relationship, you're going to take a look at sales on credit or consignment, an agreement to look for other customers, a payment of commission on sales, an indication that one party advised the other on the conduct of the other's business, or an agreement to warn of future threats to each other's business stemming from competitors or law enforcement authorities. Now, my argument is that these factors aren't found in this particular case. There is another interesting set of exchanges on the phone, or rather on text messages, with Don James and a local Green Bay person named Trell, who he's dealing with, and another local Green Bay person named Muggrees, in which they're having drug talk. Again, just as in as-a-geo conversations, my client's name isn't mentioned. There isn't a reference like, hey, my brother's going to help out. There is this kind of coincidental, different track that my client is, the evidence against my client, is employed to show that he is a member of a conspiracy. And that is that he has a conversation with a character by text named Black Doing Numbers. And when he's having this conversation with Black Doing Numbers, it's alleged, and the evidence supports these text messages, that he's saying, I'm going to pick up my bro, my bro's got a load, but there's no evidence that my client picked up anybody, which boils down to a kind of a common thread that flows through this. Yes, circumstantial evidence is as powerful as direct evidence. But this is taking circumstantial evidence to a whole different degree. This court, or rather, other courts, I should say, have said this about circumstantial evidence. The Newman v. Metrish decision from the Sixth Circuit in the United States v. Cartwright from the Third Circuit. Although circumstantial evidence alone could support a conviction, there are times when it amounts to only reasonable speculation and not sufficient evidence. Here's my parting shot. I see the yellow light is on. I think this is too much speculation, with all due respect. Counsel, is there any evidence in the record that James and your client, of an exchange of money between James and your client on the sale and purchase of drugs? No, I don't recall that. I don't recall any transfer of money from James to my client. So doesn't that cut against your argument that there's a buyer-seller relationship between these two people? Pardon me? Doesn't that create a problem to your buyer-seller relationship argument? No, Judge, and I think I know where you're coming. You're focusing on aiding and abetting, that that scenario supports he's aiding and abetting, he's not getting any money for it. I think, given the other evidence in the case, these controlled buys and other instances, they seem to support that my client is someone independent from him, that he's doing his own business, that he receives drugs from him, and I think that's the most benign way to look at it. Thank you. All right. Thank you, Your Honor. Thank you. Mr. Funnell. Good morning. May it please the Court, my name is Tim Funnell, I'm representing the government in this case. Mr. Brewer was found guilty of five different counts, that's three distribution, one possession with intent to distribute, and one conspiracy count, all related to the trafficking of fentanyl. He has to argue here that there's insufficient evidence to support the verdicts on all of those counts. As the briefing states and as counsel acknowledges today, the evidence has to be viewed most favorably to the government. He faces what this Court has called a nearly insurmountable burden, and the Court can only reverse when the record contains no evidence upon which a rational jury could find Mr. Brewer guilty. Respectfully, the government sees nothing out of the ordinary in the way that the evidence was presented in this case with regard to any component, and especially with the controlled buys. The fact that the middler did not testify is not unusual. The middler was somebody who the informant that was working with the Drug Task Force knew had contact directly with Mr. Brewer. So we have evidence in the record of the text message exchanges between the middler and Mr. Brewer that preceded each of the controlled buys. The middler was not a federal target. She was not somebody who was cooperating with the Drug Task Force. The informant was. And so from an evidentiary standpoint, since we have controlled buys, meaning audio surveillance, physical surveillance, video surveillance, we have searches of the informant before and after, we have the controlled money that's being recorded, all of those things essentially make it unnecessary for the government to bring the middler in to testify. We didn't do that. We didn't need to do that, and the jury certainly had ample evidence upon which to find the defendant, Mr. Brewer, was the party that was involved in those controlled buys. Just to take the final controlled buy as an example, the first two occurred at the residence that Mr. James and Mr. Brewer shared on University Avenue. The third controlled buy, however, took place at the residence on Ashland Avenue. That's where the middler resided. Well, we have actual video of Mr. Brewer driving his Chevy Impala to, or excuse me, the Sebring, the Chrysler Sebring, to and from arriving there and leaving the scene of the controlled buys. The controlled buys were January 21st, January 31st, and February 7th, all a week apart in 2022. They occurred just within a couple weeks of this trip that Mr. James, the defendant's brother, took to Arizona, where he was engaging in text messages and showing videos to people back in Green Bay of what he called boats of fentanyl pills. A boat is 1,000 fentanyl pills, and we're talking about the small blue imitation Percocets. He sent a video of 19 of these bags of boats, and that transaction, or excuse me, that trip took place January 6th to January 9th. We have the defendant, as Mr. Hunt acknowledged, Mr. Brewer is telling a customer in Green Bay, hey, Brother Don James is going to hop off a plane tonight. This is on January 9th, so as Mr. Brewer is engaging with this potential customer here in Green Bay, he's telling the customer, hey, we can still do business, but Brother is hopping off a plane tonight. I got to make sure he gets in the house with that load. He doesn't, Mr. Brewer does not mention any specific numbers for the load, and perhaps this gets into why we have the jury coming back the way that it did on the special verdict questions, the 400 grams and the 40 grams, because while you have Mr. James discussing specific amounts in his text messages with the person in Arizona and with a couple people in Green Bay, you do not have Mr. Brewer engaging in those types of specific wholesale numbers, because as Mr. James says in one of his text messages, he says, I wholesale, and as the district court emphasized in its denial of the Rule 29 motion, you essentially have Mr. James and Mr. Brewer working together in this shared enterprise where Mr. James is working at the wholesale level, getting volume, and Mr. Brewer is engaging at the retail level, dishing these things out. What do you make of the absence of any mention of payment? I think that's an important point because there really didn't need to be discussion between Mr. James and Mr. Brewer about payment because they were clearly working together. There was no need to negotiate numbers between the two because that's not where the negotiation was occurring. It was occurring at the wholesale level with Mr. James. We do have one instance, however, where the money from the, I believe it was the January 31st control buy, the recorded buy money, $140 of that buy money ended up in the potential bail money for Mr. James, and the way that that money would have been routed to Mr. James' sister would have been that it went from the informant to, well, from drug task force to the informant on January 31st. Then it would have gone briefly to the middler. Then it would have gone to Mr. Brewer in exchange for the pills. Fast forward from that January 31st control buy to February 12th, and Mr. James is now under arrest. Mr. Brewer had been arrested on the 8th or 9th, I believe. Mr. James is now under arrest, and he's telling his sister that he needs some bail money. He tells her to get $5,000 bail money for him. Well, in that $5,000 bail money, lo and behold, they find $140 in the buy money that Mr. Brewer had been a part of that control transaction back on January 31st. Could I ask you to address, if you would, this sentencing issue with respect to conduct from which the accused was arguably found not guilty with respect to the amount, and then the district judge decided to consider it. At midnight tonight, we have a new guideline coming into effect. Does that, in effect, say that going forward at least that district judges can't do this? Does that new guideline have any effect on our case? It does not, Your Honor. The Sentencing Commission, to my knowledge, has not made that guideline retroactive, at least to this point. If they do make it retroactive, that could potentially form the basis for a 3582C motion for Mr. Brewer. At this point, however, since there is no such retroactivity, there would be nothing for this court to do. I know that there's sort of a similar situation in a different case at the court, the Claiborne case, and it's not cited, but since it was raised here, where if it was a situation where we knew right here today that it had been made retroactive, then perhaps the government would consider joining in such a motion to bring it back before the court. And that gets to the second part of your question, which is, is this the type of case where that new guideline could play a role? And I think the answer is contained within the language of the guideline in two different places. Number one, it says that when the underlying conduct that is the acquitted conduct, if it either forms the basis in whole or in part of the instant offense of conviction, then the acquitted conduct guideline does not require it to be disregarded. However, it does say that the district court is in the best position or the ideal position to make that sort of determination. So just to play this out, if we get to the point that there is a retroactive 3582C situation here with Mr. Brewer, Judge Griesbach would be well suited to then take that matter up, if a motion is brought, and determine whether the conduct, the 400-gram threshold, the 40-gram threshold, the pills that were coming back from Arizona, the 19,000 votes, the 30,000 discussion, the 30,000 pills, all of those things, he would be well suited to make a determination whether that is part wholly or in part of the instant offense of conviction. And what happens to the Watts case, the Supreme Court case that basically said the government or the district judge could consider acquitted conduct? Well, I think there would be two things that come out of that, Your Honor. One is just as a matter of due process and the basis of the Watts decision, I think the court still could consider it because when we're dealing with the new guideline, that is a guideline calculation exclusively. And so I don't think there's anything in the guideline itself or in any other case law that would say the judge is, even though he's now bound by this new guideline, that he can't consider it under the 3553A factors. Sort of similar to the death results enhancement for drug cases, where we see those in fentanyl cases where I believe this court has said that the death enhancement has to be part of the instant offense of conviction to be part of the guideline calculation, but it can still be part of the 3553A determination. And I see I'm out of time. We would ask you to adjourn. Thank you. Thank you. Mr. Hunt, I don't think you had time left over. You had a little bit of time left. I'll give you some extra time. I turned 70 this morning. And I want to thank you. I grew up in the city of Chicago on the south side of the back of the yard. It's a neighborhood. And it's been a rare treat to come down here. Thank you all. Thank you. And please do Mr. Brewer a favor.  Happy birthday. Thank you. All right. Thanks to both counsel. The case is taken under advisement.